UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| DELORES CLIPPER, | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Civil Action No. 03-2642 (RCL) |
| JAMES H. BILLINGTON, Librarian of Congress, | ) ) ) ) | |
| Defendant. | ) ) | |

## MEMORANDUM OPINION

This employment discrimination case comes before the Court on a Motion [42] for Summary Judgment filed on behalf of defendant James H. Billington, Librarian of Congress. Plaintiff, appearing pro se, filed an Amended Civil Complaint [7] alleging race discrimination, including non-selection for promotion, disparate treatment, and a hostile work environment, in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, *et seq.*; age discrimination in violation of the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621 *et seq.*; as well as retaliation in violation of Title VII, ADEA, and the Rehabilitation Act of 1973, 29 U.S.C. § 701 *et seq.*[1]

For the reasons set forth herein, the defendant's motion will be granted on all counts.

### I. FACTUAL BACKGROUND

Beginning in 1976 through July of 2004, plaintiff worked for the Library of Congress

---

[1] Plaintiff cannot rely on the Rehabilitation Act, as under *Judd v. Billington*, 863 F.2d 103, 104-105 (D.C. Cir. 1988), it does not apply to Library of Congress employees.

("the Library"), primarily in the position of Parking Program Specialist (GS-301-11).  Pl..' Resp. to Mot. SJ, Affidavit of Delores Clipper ("Clipper Aff.").  From 1986 to 2000, plaintiff worked under Linda L. Garrison, however in December 2000, Garrison retired from the Library.  (Def. Mot. SJ Ex. 1, ¶ 14:17-22.)

Previous to Garrison's retirement, in March of 2000, Gary Columbia had been detailed from his position, as Assistant Head of the Library of Congress Contracts and Logistics division, to the Integrated Support Services ("ISS") division office; he was tasked with reviewing and streamlining ISS programs and procedures, with the goal of improving customer service.  (Def. Mot. SJ Ex. 4, ¶ 2.)  Upon Garrison's retirement, Columbia assumed responsibility for the Library's parking program, which included supervising the plaintiff. (*Id.*)  The Library did not at any time post a vacancy or seek applicants to replace Garrison's open position.  (Def. Mot. SJ Ex. 3, ¶ 4[B].)  Plaintiff has never applied for the position and acknowledges that she is not qualified to fill it.  (Pl. Resp. to Mot. SJ at 2.)

While under Garrison's supervision, plaintiff received "outstanding" and "excellent" ratings on her evaluations.  (Clipper Aff. ¶ 2.)  However, her job performance came into question under Columbia's leadership, where she achieved only a "satisfactory" rating on her evaluation. (Pl. Resp. to Mot. SJ at 2.)  Upon his assumption of supervision of the parking program, Columbia and the plaintiff began collaborating on a pilot program for increasing parking garage enforcement efficiency.  (Def. Mot. SJ Ex. 4, ¶¶ 4-5.)  As a result of his interactions with plaintiff, Columbia became alarmed at the lack of knowledge plaintiff displayed about the parking program and her overall performance.  (*Id.*)  Plaintiff met with Columbia's supervisor, Linda Washington, on February 7, 2001, and complained of her discomfort with Columbia's

demeanor and management style.  On February 12, 2001, Columbia gave plaintiff a memorandum entitled "Performance Expectations" (Def. Mot. SJ Ex. 5; Clipper Aff. ¶ 6.), outlining instances where plaintiff's execution of her duties and professional demeanor had been deficient.

In the memorandum, Columbia cited numerous examples of the plaintiff missing deadlines, shirking her responsibilities, failing to make promised adjustments in her schedule, and having a generally insubordinate and negative attitude.  (Def. Mot. SJ Ex. 5.)  Columbia also asserted his expectations of the plaintiff and indicated confidence that they would be able to "turn this situation around positively."  (*Id.*)  In reply, on February 23, 2001, plaintiff filed an informal dispute in the Library's Dispute Resolution Center ("DRC") (Def. Mot. SJ Ex. 6.) and wrote an accompanying memorandum also entitled "Performance Expectations."  (Def. Mot. SJ Ex. 7.)  In the memo, she responded to Columbia's allegations and criticized his management, indicating that he was abusive, belittled and humiliated her, made her cry, and generally treated her with disrespect and scorn.  (*Id.*)

Columbia contends that DRC asked that he agree to detail plaintiff, at her request,  to another position in the Library as a possible remedy to the dispute.  (Def. Mot. SJ Ex. 4, ¶ 7.)  Plaintiff, however, denies ever requesting to be detailed from her position in the parking program.  (Pl. Resp. to Mot. SJ at 3.)  Based on her incompatibility with the parking program and her apparent desire to change positions, Columbia worked with Human Resources to detail the plaintiff and replace her with a more suitable candidate.  (Def. Mot. SJ Ex. 4 ¶ 7-9.)  Due to a reduction-in-force at the Library, Eva Shade, a female, African American candidate that Columbia's supervisor Washington felt would be "an asset to the parking program," was

reassigned to ISS effective April 22, 2001. (*Id.*; Def. Mot. SJ Ex. 9.) That day, Washington detailed plaintiff to "undescribed duties" where she maintained her current grade and salary. (Def. Mot. SJ Ex. 10.)

Plaintiff immediately went on sick leave, and did not return to the Library until July 2, 2001. ((Pl. Resp. to Mot. SJ at 9.) At that time she was detailed by Washington to the Contracts and Logistics division for 30 days to "undescribed duties" commensurate with her grade level and maintaining her current salary. Pl. Resp. to Mot. SJ, Memorandum of Linda J. Washington ("Washington Mem."). This assignment was altered on July 6, 2001, when Columbia issued another memorandum detailing plaintiff for 30 days to "undescribed duties," commensurate with her grade level and also maintaining her current salary, in the Directorate of Law Library Services. (Def. Mot. SJ Ex. 11.)

Plaintiff was continuously detailed, with the exception of her extended medical absence, from April 22, 2001 to December 14, 2002. (Def. Mot. SJ Ex. 4, ¶ 14.) After receiving a notice of final interview (regarding her informal dispute) and right to file a formal complaint (Def. Mot. SJ Ex. 13.), on August 9, 2001, plaintiff filed an Equal Employment Opportunity ("EEO") complaint. Ultimately, on December 15, 2002, plaintiff was permanently laterally reassigned to be an Inventory Management Specialist in Contracts and Logistical Services. (Def. Mot. SJ Ex. 18.) Twice during this time frame (once during her detailing and once after her reassignment) plaintiff received within-grade pay increases. (Def. Mot. SJ Ex. 17&19.)

## II. DISCUSSION

### A. Legal Standard

Summary judgment is warranted where "the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact." Fed. R. Civ. P. 56(c). The presence of disputed facts alone is insufficient to defeat summary judgment; "the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). An issue is genuine if there is evidence on which a jury could base a verdict for the nonmoving party. *Id.* at 248. A fact is material if the dispute over it could determine the outcome of the suit under governing law. *Holcomb v. Powell*, 2006 U.S. App. LEXIS 520, *8-9 (D.C. Cir. 2006).

The party seeking summary judgment bears the responsibility of demonstrating that no genuine issues of material fact are in dispute. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party is successful, that party is entitled to summary judgment as a matter of law, if the party opposing summary judgment "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322. In making this determination, "the inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-588 (1986) (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)).

**B. Title VII Discrimination Claims**

    **1. Non-selection Claim**

Under Title VII, federal employees are guaranteed that "[a]ll personnel actions . . . shall be made free from any discrimination based on race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-16(a). In cases similar to the present case, where there is no direct evidence of discrimination, the Court applies the *McDonnell Douglas* burden-shifting test. *See Cones v.*

*Shalala*, 199 F.3d 512, 516 (D.C. Cir. 2000) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, (1973));  *Lathram v. Snow*, 336 F.3d 1085, 1088 (D.C. Cir. 2003). "Under this framework, the plaintiff must first establish, by a preponderance of the evidence, a 'prima facie case' of discrimination."  *Romero-Ostolaza v. Ridge*, 370 F. Supp. 2d 139, 145 (D.D.C. 2005) (citing *Teneyck v. Omni Shoreham Hotel*, 365 F.3d 1139, 1149 (D.C. Cir. 2004));  *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000).  To make a prima facie case for discriminatory non-selection, the plaintiff must demonstrate that [1] she is a member of a protected class; [2] she applied for and was qualified for an available position; [3] she was rejected despite her qualifications; and [4] the position was either filled or the employer continued to seek applicants to fill its vacancy.  *Lathram*, 336 F.3d at 1088.

  The plaintiff has not established a prima facie case for discriminatory non-selection.  It is undisputed that after her supervisor's retirement from the parking program in December 2000, the Library neither posted a vacancy nor sought applicants to fill the position.  (Pl. Resp. to Mot. SJ at 3.)  Further, plaintiff admits that she did not apply for her supervisor's previous position and that she is not qualified to hold the position.  (*Id.*)  While failure to apply for a position is not a per se bar to a non-selection claim, the plaintiff must have "made every reasonable attempt to convey h[er] interest in the job to the employer."  *See Cones*, 199 F.3d at 518 (quoting *EEOC v. Metal Service Co.*, 892 F.2d 341, 348 (3d Cir. 1990)).  The plaintiff presents no evidence to suggest that she alerted the Library to her desire for advancement.  Therefore, the plaintiff's claim of failure to promote based upon race, color, and gender, fails due to her inability to demonstrate three of four prongs required to establish a prima facie case.

**2. Disparate Treatment Claim**

Title VII disparate treatment claims, like non-selection claims, are analyzed under the *McDonnell Douglas* framework. However, to establish a prima facie claim for disparate treatment discrimination, the plaintiff must demonstrate that [1] she is a member of a protected class; [2] she was subject to adverse employment action; and [3] the unfavorable action gives rise to an inference of discrimination. *Brown v. Brody*, 199 F.3d 446, 452 (D.C. Cir. 1999); *Forkkio v. Powell*, 306 F.3d 1127, 1130 (D.C. Cir. 2002); *Dobbs v. Roche*, 329 F. Supp. 2d 33, 40 (D.D.C. 2004). It is undisputed that plaintiff, an African-American woman over 40 years old, is a member of a protected class. (Def. Mot. SJ at 14, n.5.) Plaintiff alleges that based on her status, she was treated differently by the Library in terms of "details, awards, leave, overtime, and compensatory time," (Pl. Compl. ¶ 20.), under circumstances giving rise to an inference of discriminatory animus. (*Id.* at ¶ 21.)

Adverse employment action is defined as "a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation." *Burlington Indus. v. Ellerth*, 524 U.S. 742, 761 (1998) (quoting *Crady v. Liberty Nat'l Bank & Trust Co.*, 993 F.2d 132, 136 (7th Cir. 1993)). Adverse employment actions are not confined to hirings and firings; actions "need not fall into cognizable categories to be considered adverse." *Holcomb,* 2006 U.S. App. LEXIS 520, at *30 (citing *Cones*, 199 F.3d at 521). Not all employment actions constitute adverse actions, regarding reassignment in particular:

> A plaintiff who is made to undertake . . . a lateral transfer - that is,

> one in which she suffers no diminution in pay or benefits - does not suffer an actionable injury unless there are some other materially adverse consequences affecting the terms, conditions, or privileges of her employment or her future employment opportunities such that a reasonable trier of fact could conclude that the plaintiff has suffered objectively tangible harm. Mere idiosyncrasies are not sufficient to state an injury.

*Stewart v. Ashcroft*, 352 F.3d 422, 426 (D.C. Cir. 2003) (quoting *Brown*, 199 F.3d at 457). There are, however, lateral transfers which, due to their unique circumstances, qualify as adverse employment actions. *Id.* In *Holcomb*, uncontroverted evidence of a long-term "extraordinary reduction in responsibilities" (in both quality and quantity) sufficed to establish the element of a materially adverse consequence that inflicted objectively tangible harm. 2006 U.S. App. LEXIS 520, at *32-33.

Viewing the evidence in the light most favorable to the plaintiff, as the Court must, it is reasonably possible a jury would infer that she suffered an adverse employment action due to her "reassignment with significantly different responsibilities." *Burlington*, 524 U.S. at 761. Though plaintiff did not experience any reduction in wages or benefits (rather she received two wage increases), she was detailed out of her parking specialist position to various other positions with "undescribed duties" for nearly two years.[2] (Def. Mot. SJ at 6-7.) Plaintiff repeatedly avers that the positions she was detailed to had insufficient work assignments and low responsibilities. (Pl. Resp. to Mot. SJ at 9-10.) She further asserts that there was no potential for career advancement. (*Id.*)

Having satisfied the first two prongs for establishing a prima facie case for disparate

---

[2] Plaintiff's claims regarding awards, leave, overtime, and compensatory time do not rise to the level of adverse employment actions, as they all fall squarely within the Library's rules and regulations. *See* Def. Mot. SJ Ex. 22, 24-25, 27-28.

treatment, the plaintiff fails to promulgate evidence from which a reasonable jury could infer the adverse employment action was the result of discrimination.  Plaintiff recites a barrage of conclusory statements regarding Columbia's alleged racial animus, for example: "Mr. Columbia thinks he can do anything to [sic] African-Americans.  Mr. Columbia shows no shame when he discriminates," and "Mr. Columbia was angry because he resents [sic] African-Americans."

Aside from her belief that Columbia's harsh treatment of her was racially motivated, however, plaintiff only provides one credible piece of evidence which directly indicates a discriminatory attitude towards African-American employees: an affidavit by Debra B. D. Murphy (Chief of Contracts and Logistics Services at the Library, while Columbia was Assistant Chief of the same division).[3]  In her affidavit, Murphy indicates that Columbia was "extremely critical and demeaning to many of the African American staff members," and that as a result many discrimination suits had been filed against him *before* her arrival.  Resp. to Mot. SJ, Affidavit of Debra B. D. Murphy ("Murphy Aff.").  There is no further evidence regarding other suits against Columbia.  The mere filing of informal discrimination complaints, without information regarding their nature, merit or outcome, is insufficient to establish discriminatory animus.  *See Holcomb*, 2006 U.S. App. LEXIS 520, at *23.

Moreover, even if plaintiff were able to provide evidence giving rise to an inference of discrimination, the Library had legitimate, non-discriminatory reasons for detailing her from the parking specialist position (Def. Mot. SJ Ex. 5.): namely, repeated instances of incompetence and

---

[3]  Plaintiff identified several parties with whom she claimed to be "similarly situated," for the purpose of establishing discrimination by comparison, however, none of the comparators approached the level of similarity required under *Holbrook v. Reno*, 196 F.3d 255, 261 (D.C. Cir. 1999).

an apparent total inability to effectively fulfill her job duties.  *See St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506-507 (U.S. 1993) (instructing that once the plaintiff has established a prima facie case, the burden is transferred to the defendant to provide an explanation to rebut the inference of discrimination, by showing a legitimate, non-discriminatory purpose for the adverse employment action).  While plaintiff does provide some explanation for her failure to complete tasks and generally negative attitude (Def. Mot. SJ Ex. 7), the evidence overwhelmingly supports the Library's contention that plaintiff's reassignment was done in the best interests of the parking program.  As the plaintiff bears the ultimate burden of persuasion that the Library's reasons for her reassignment were pretextual, and falls dramatically short, summary judgment in favor of the defendant is warranted, since no reasonable juror would have sufficient evidence to conclude that the Library's reasons were pretextual.  *St. Mary's Honor Ctr.*, 509 U.S. at 517-516.

### 3. Hostile Work Environment Claim

Also analyzed under the *McDonnell Douglas* format, a prima facie case for a hostile work environment demands the plaintiff establish that [1] she is a member of a protected class; [2] she was subjected to unwelcome harassment; [3] the harassment was based on her status within the protected class; [4] the harassment unreasonably interfered with her work performance and created a hostile work environment; and [5] the employer knew or should have known about the condition but failed to act.  *See Lester v. Natsios*, 290 F. Supp. 2d 11, 22 (D.D.C. 2003) (citing *Jones v. Billington*, 12 F. Supp. 2d 1, 11 (D.D.C. 1997), aff'd, 1998 U.S. App. LEXIS 15459, 1998 WL 389101 (D.C. Cir. June 30, 1998)); *cf. Williams v. Chertoff*, 2005 U.S. Dist. LEXIS 38847 (D.D.C. 2005).  To ascertain whether a work environment is sufficiently hostile to be actionable under Title VII, the Court must consider all the circumstances: the frequency and

severity of the conduct; whether the conduct is physically threatening; and if the conduct reasonably interferes with job performance. *Faragher v. Boca Raton*, 524 U.S. 775, 787-88 (1998) (indicating that Title VII should not be diminished into a "general civility code").

Plaintiff alleges rampant misconduct on the part of Columbia, including but not limited to: speaking to her in an arrogant and verbally abusive manner, making her feel inferior to him, threatening her by banging his fist on a table and staring her in the eyes without blinking, insulting her in front of coworkers, and trying to force her to be insubordinate to him. (Pl. Resp. to Mot. SJ.) While it is clear that the plaintiff perceived Columbia's conduct as offensive and degrading, completely inappropriate in a work environment, there is no evidence to suggest that it was based on her status as a minority.

Further, though it appears that confrontations between plaintiff and Columbia were frequent, they were of low severity (typically revolving around Columbia's tone of voice). The only allegation of physicality on the part of Columbia is that he banged his fist on a table. Were plaintiff to prove all of her allegations, she still would not meet a prima facie case for a hostile work environment, and therefore summary judgment in favor of the defendant is appropriate. *Faragher*, 524 U.S. at 786 (citing *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 67 (1986) (requiring that harassment be so "severe or pervasive" that it alters the conditions of employment creating an abusive environment).

**C.  ADEA Discrimination Claim**

Plaintiff alleges that being detailed from her position as a parking specialist was age discrimination. Under the ADEA, it is "unlawful for an employer . . . to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his

compensation, terms, conditions, or privileges of employment, because of such individual's age."
29 U.S.C. § 623(a)(1).  Liability is dependent on whether the employer's decision was motivated by the individual's age (under ADEA, over 40 years old).  *Threadgill v. Spellings*, 377 F. Supp. 2d 158, 160 (D.D.C. 2005) (citing *Hazen Paper Co. v. Biggins*, 507 U.S. 604, 610 (1993)). Plaintiff must demonstrate that but for her age she would not have been subject to the employer's action.  *Threadgill*, 377 F. Supp. 2d at 160 (citing *Hayman v. National Academy of Sciences*, 23 F.3d 535, 538 (D.C. Cir. 1994)).

Under *O'Connor v. Consolidated Coin Caterers Corp.*, 517 U.S. 308 (1996), the Supreme Court held that the *McDonnell Douglas* framework is applicable to ADEA claims.  *Simens v. Reno*, 960 F. Supp. 6, 8 (D.D.C. 1997).  Plaintiff is over 40 years old, and thereby qualifies for protection for ADEA purposes.  *O'Connor*, 517 U.S. at 312.  As discussed *supra* section B[2], plaintiff's being detailed for nearly two years qualifies as an adverse employment action. However, the plaintiff's claim fails on the final prong of analysis as she has provided no facts from which a jury could infer that she was reassigned due to age discrimination.  In addition, even were plaintiff able to produce evidence which could lead to such a conclusion, the Library had ample legitimate non-discriminatory reasons for plaintiff's transfer.

**D. Retaliation Claim**

Plaintiff alleges she was the victim of retaliation, in violation of Title VII and ADEA, based on her being detailed from her position and denied awards, overtime, compensatory time and leave.[4]  (Pl. Compl. ¶¶ 39-41.)  Both Title VII and ADEA retaliation claims are analyzed

---

[4] Plaintiff's claims regarding awards, leave, overtime, and compensatory time do not rise to the level of adverse employment actions, as they all fall squarely within the Library's rules and regulations.  *See* Def. Mot. SJ Ex. 22, 24-25, 27-28.

under the *McDonnell Douglas* framework, however the prima facie requirements are "slightly different": plaintiff must demonstrate that [1] she engaged in a statutorily protected activity; [2] the employer took an adverse employment action; and [3] there is a causal relationship between the two. *Romero-Ostolaza*, 370 F. Supp. 2d at 148 (citing *Brown*, 199 F.3d at 452); *Morgan v. Fed. Home Loan Mortg. Corp.*, 328 F.3d 647, 651 (D.C. Cir. 2003).

It is undisputed that plaintiff engaged in statutorily protected activities. (Def. Mot. SJ at 37.) As discussed *supra* section B[2], detailing plaintiff for nearly two years qualifies, for summary judgment purposes, as adverse employment action. "At the prima facie stage of a retaliation claim, a plaintiff's burden 'is not great; [she] merely needs to establish facts adequate to permit an inference of retaliatory motive.'" *Holcomb,* 2006 U.S. App. LEXIS 520, at *34 (citing *McKenna v. Weinberger*, 729 F.2d 783, 790 (D.C. Cir. 1984)). Based on the fact that plaintiff "repeatedly engaged in protected activity during the period when she also experienced reduced work assignments . . . she has met this minimal burden and made out a prima facie case of retaliation." *Holcomb,* 2006 U.S. App. LEXIS 520, at *35.

However, the plaintiff's claim ultimately fails under the remaining elements of the *McDonnell Douglas* test, as the Library has demonstrated sundry "legitimate, non-discriminatory reasons for its presumptively retaliatory action." *Id.* The plaintiff has the ultimate burden of showing that the defendant's non-discriminatory reasons are pretext for retaliation. *Cones*, 199 F.3d at 520-521 (citing *Berger v. Iron Workers Reinforced Rodmen Local 201*, 843 F.2d 1395, 1423 (D.C. Cir. 1988)). In the present action, the plaintiff has failed to meet that burden, therefore summary judgment must be granted in favor of the defendant.

### III. CONCLUSION

For the foregoing reasons, this Court concludes that the Library has met its summary judgment burden on all counts. Accordingly, and for the reasons stated herein, the Library's motion for summary judgment is hereby GRANTED on all counts.

A separate Order shall issue this date.

Signed by Royce C. Lamberth, United States District Judge, January 31, 2006.